IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEINEKE FRANCHISOR SPV LLC,<br><br>Plaintiff,<br><br>vs.<br><br>USMAN AUTO, INC., a New Jersey corporation, USMAN AHMAD, and GULZAR AHMAD,<br><br>Defendants. | Civil Action No.: |

## COMPLAINT

Plaintiff, MEINEKE FRANCHISOR SPV LLC ("Meineke"), by and through its undersigned counsel, as and for its Complaint against Defendants, USMAN AUTO, INC., a New Jersey corporation (the "Operating Company"), USMAN AHMAD ("U. Ahmad"), an individual, and GULZAR AHMAD ("G. Ahmad"), an individual, (U. Ahmad and G. Ahmad, collectively the "Guarantors") (the Operating Company and Guarantors, collectively "Defendants") alleges as follows based on knowledge of its own actions, and on information and belief as to Defendants' actions (unless indicated otherwise).

## NATURE OF THE CASE

By this action, Meineke seeks to recover amounts owed by Defendants pursuant to the parties' franchise agreement. Defendants entered into a franchise agreement with Meineke for the operation of a franchised Meineke Car Care Center. Defendants materially breached the franchise agreement by prematurely closing and abandoning the franchised Meineke Car Care Center prior to the end of the term without Meineke's authorization or approval.

## THE PARTIES

1. Meineke is a limited liability company organized and existing under the laws of the State of Delaware, with its offices and principal place of business located at 440 South Church Street, Suite 700, Charlotte, Mecklenburg County, North Carolina.

2. Meineke is a Delaware limited liability company and its sole member is Driven Systems, LLC. Driven Systems, LLC is a Delaware limited liability company and its sole member is Driven Brands Funding, LLC. Driven Brands Funding, LLC is a Delaware limited liability company and its sole member is Driven Funding HoldCo, LLC. Driven Funding HoldCo, LLC is a Delaware limited liability company and its sole member is Driven Brands, Inc. Driven Brands, Inc. is a Delaware corporation with its principal place of business located at 440 S. Church Street, Suite 700, Charlotte, North Carolina 28202-2059. Thus, for jurisdictional purposes, Driven Brands, Inc., and in turn, Meineke Franchisor SPV LLC is a citizen of both Delaware and North Carolina.

3. Upon information and belief, Respondent, Usman Auto, Inc., is a corporation existing under New Jersey law, with its principal place of business at 130 Rahway Avenue, Elizabeth, New Jersey 07202.

4. Upon information and belief, Respondent, Usman Ahmad, is a citizen and resident of the State of New Jersey, residing at 3438 Pheasant Hill Drive, Allentown, Pennsylvania 18104.

5. Upon information and belief, Respondent, Gulzar Ahmad, is a citizen and resident of the State of New Jersey, residing at 4816 Snapjack Circle, Naperville, Illinois 60564.

## JURISDICTION AND VENUE

6. Meineke operates and franchises motor vehicle painting and body repair businesses throughout the United States. Meineke's franchise operations are conducted and supervised from its world headquarters located in Charlotte, Mecklenburg County, North Carolina.

7. Meineke and Defendants have carried on a continuous course of direct communication by mail and by telephone through Meineke's world headquarters.

8. The course of dealing between Meineke and its franchisees shows that Meineke's decision-making authority is currently vested in its world headquarters.

9. Meineke's claims arise out of promises made by the Defendants in writing to be performed within the Court's jurisdiction.

10. This Court has subject matter jurisdiction over Defendants pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the requisite sum or value of $75,000.00, exclusive of interest and costs.

11. This Court has *in personam* jurisdiction over Defendants because Meineke's claims arise out of promises made in Charlotte, Mecklenburg County, North Carolina, by virtue of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and North Carolina's "long arm" statute, N.C. Gen. Stat. § 1-75.4.

12. Venue of this action in this judicial district and division is proper pursuant to 28 U.S.C. §1391(b)(2) because, among other things, a substantial part of these events or omissions giving rise to the claims in this action occurred in this judicial district and division and Defendants negotiated for a long-term franchise and contractual business relationship with Meineke, who is situated in Mecklenburg County, North Carolina.

## GENERAL ALLEGATIONS

*The Nature of Meineke's Business and Meineke's Trademarks*

13. Since its founding, the Meineke franchise system has extensively used, caused to be advertised, and publicized throughout the United States certain distinctive color schemes, logos, and symbols as trademarks, service marks, and trade dress to identify the source, origin, and sponsorship

of its system's facilities and services (the "Meineke Marks").

14. Among the Meineke Marks, Meineke owns the marks and, as applicable, related logo for "Meineke" and "Meineke Car Care Center" that are registered with the United States Patent and Trademark Office – No. 63181, 63182, 1207483, 1241466, 3017566, 1434915, 1207490, 1610116, 1620331, 2956651, 3126819, 3126804, and 2979521.

15. Each franchisee or licensee who so manufactures, distributes, or sells such goods and services does so in association with the name "Meineke" and the Meineke Marks.

16. The relationship between Meineke and its franchisees is governed by the terms and conditions of the franchise and trademark agreements entered into between Meineke and each franchisee.

17. The franchisee's license to use and display the Meineke Marks is contractually conditioned upon the franchisee meeting or exceeding a minimum threshold for quality of services and products associated with the integrity and goodwill of the Meineke Marks.

18. Meineke details its proprietary and unique methods, procedures, and techniques used to achieve the minimum levels of quality associated with the Meineke Marks (the "Meineke System") in its collection of best practices and statement of minimum performance (the "Operations Manual").

19. Over forty years since its founding, Meineke remains engaged in the business of franchising Meineke Car Care Centers that utilize the Meineke System to specialize in motor vehicle repair and in other automotive products and services. As a result of the consistently high level of customer service arising from the use of its proprietary operating system and the substantial amount of money and effort invested in advertising over Meineke System's forty years, Meineke enjoys a substantial amount of goodwill and a large pool of customers.

20. Meineke franchises and licenses the right to operate a motor vehicle repair shop using

the Meineke System as detailed by the Operations Manual and displaying the Meineke Marks pursuant to the terms and conditions of its written franchise agreement.

21. Pursuant to Meineke's franchise agreements, every Meineke franchisee is required by its franchise agreement to attend a training program designed to teach the Meineke System to franchisees and to operate their franchise in accordance with the minimum threshold of standards, specifications, policies, and procedures as set forth in the Operations Manual to ensure uniformity and protection of the integrity and goodwill associated with the Meineke Marks and Meineke System.

22. From time to time, Meineke provides franchisees with consultation and assistance to assist franchisee's compliance with the minimum operating thresholds in order to safeguard the integrity of the Meineke System and the Meineke Marks and ensure that franchisees are meeting or exceeding the minimum critical quality, safety, and service standards associated with the Meineke Marks.

23. As a result of its substantial investments of time, money, and effort to develop and implement the Meineke System, Meineke has established a favorable reputation and a positive image with the public as to the quality of goods and services available at Meineke motor vehicle repair centers. This reputation, goodwill, and image have been, and continue to be, valuable assets of Meineke.

24. Meineke endeavors to maintain its positive reputation and image by, among other things, (i) carefully identifying and selecting authorized franchise owners, facilities, and locations and (ii) safeguarding the integrity and goodwill of the Meineke Marks by confirming those franchisees meet the minimum quality and service standards associated with the Meineke Marks.

25. As consideration for Meineke's agreement to disclose the Meineke System and allow its franchisees to use the Meineke System, display the Meineke Marks, and enjoy the substantial

goodwill associated therewith, all franchisees agree to operate for a set term and forego involvement with any other business providing automotive maintenance and repair products or services during the term of their franchise agreement and for a specified time period after the termination or expiration of their franchise agreement.

26. These agreements and covenants are essential to maintaining the integrity and goodwill of the Meineke Marks, the Meineke System, the associated goodwill, and Meineke's and its franchisees' investments in their businesses by, among other things, protecting Meineke and its franchisees from damages to the brand and from unfair and unlawful competition arising from franchisees attempting to trade on their knowledge of the Meineke System and the goodwill associated with the Meineke System and the Meineke Marks.

<em>The Franchise Agreement</em>

27. Meineke and the Operating Company are parties to the Meineke Franchisor SPV LLC Franchise and Trademark Agreement dated April 26, 2024 (together with related addenda, the "Franchise Agreement") for the renewed operation of Meineke Car Care Center No. 115 located at 130 Rahway Avenue, Elizabeth, New Jersey 07202 (the "Center") in accordance with the terms and conditions set forth in the Franchise Agreement. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit A** and incorporated by reference as if fully set forth herein.

28. Contemporaneous with the execution of the Franchise Agreement, U. Ahmad and G. Ahmad each executed a personal guaranty whereby they agreed to be jointly and severally liable with the Operating Company with respect to the payment and performance of each and every undertaking, agreement, and covenant set forth in the Franchise Agreement (the "Guaranty"). A true and correct copy of Guaranty is attached hereto as **Exhibit B** and incorporated by reference as if fully set forth herein.

29. The Franchise Agreement required Defendants to operate the Center, under the trade name "Meineke" and using the Meineke Marks, through and including April 26, 2034, pursuant to the terms, conditions, and obligations of the Franchise Agreement.

30. Under the terms of the Franchise Agreement, Defendants agreed, among other things, to: (i) pay Meineke on a weekly basis a continuing franchise fee, or royalty, at varying rates depending on the goods and/or services being provided (**Exhibit A**, ¶ 3.2); (ii) pay a weekly advertising contribution of 8% of gross revenues (**Exhibit A**, ¶ 3.4); and (iii) purchase or lease computer software at Defendants' own expense (**Exhibit A**, ¶ 9.2).

31. Meineke's primary source of revenue from the operation of its business is derived from the payment of franchise royalties based on weekly sales reported by the franchisees. The substantial majority of Meineke's advertising budget on behalf of its franchisees is derived from the advertising contributions remitted to Meineke by its franchisees.

32. Defendants agreed, among other things, that upon termination of the Franchise Agreement, they shall immediately pay all amounts owed to Meineke and its subsidiaries or affiliates (Franchise Agreement ¶ 15.1).

<u>*Defendants' Breach of the Franchise Agreement*</u>

33. On or about June 16, 2025, Defendants informed Meineke that they unilaterally closed and abandoned the Center without Meineke's authorization or approval in material violation of the Franchise Agreement.

34. Defendants also breached their obligations and were in default of the Franchise Agreement by failing and/or refusing to pay to Meineke royalties, advertising contributions, and other amounts due and owing under the Franchise Agreement.

35. On June 30, 2025, Meineke sent Defendants a Notice of Termination for the

unauthorized and premature and permanent closure of the Center in violation of the Franchise Agreement. A true and correct copy of the Notice of Termination is attached hereto as **Exhibit C** and incorporated by reference as if fully set forth herein.

36. In the Notice of Termination, Meineke reminded Defendants of their post-termination obligations, including the obligation to pay all amounts due and owing under the Franchise Agreement.

*Damages*

37. Defendants' material breaches of their obligations directly injured Meineke in the form of actual damages, as well as lost royalties, advertising contributions, and other fees for the remainder of the Term.

38. Meineke is entitled to compensation for these injuries and is entitled to be placed in the same position it would have been had the obligations under the Franchise Agreement been performed. These damages include (a) the amounts owed to Meineke prior to or at the time of termination of the Franchise Agreement, and (b) the lost royalties, advertising contributions, and other fees due under the remainder of the Term of the Franchise Agreement which are the proximate result of Defendants' breaches.

39. As of June 30, 2025, the amount past due and owing by Defendants to Meineke in relation to the operation of the Center totaled Twenty-Seven Thousand Fifty-Nine and 16/100 Dollars ($27,059.16) (the "Accounts Receivable").

40. Defendants' failure to operate the Center for the full Term and their failure to pay any amounts past due and owing, by the sole and independent decision of Defendants, was not caused by any action or inaction of Meineke.

41. Meineke's lost royalty fees and advertising contributions for the remainder of the Term

are not conjectural, remote, or speculative because Meineke is able to determine these amounts with reasonable certainty.

42. Meineke is able to determine these amounts with reasonable certainty by using the historical average royalties and advertising contributions paid or required to be paid by Defendants over the three years preceding the termination and multiplying those amounts by the number of months remaining in the Term or for a period of three (3) years, whichever is less.

43. Meineke mitigates its damages by aiming to replace the loss of the Center with a new Meineke franchised location which on average takes about three (3) years for Meineke to begin realizing royalties and advertising contributions again after the premature closure of the Center.

44. As a result of Defendants' unauthorized and premature closure of the Center, Meineke has incurred lost royalty fees in the amount of Seventy-Seven Thousand Four Hundred Fifty-Six and 68/100 Dollars ($77,456.68) and lost advertising contributions in the amount of One Hundred Three Thousand Five Hundred Twenty and 18/100 ($103,520.18) (the "Default Damages").

45. Meineke is entitled to lost royalty fees and advertising contributions, at an amount yet to be determined, under the terms of the Franchise Agreement because those amounts: (i) are reasonably certain to have been realized except for the breach of contract; (ii) are calculable and/or measurable with reasonable certainty; and (iii) were reasonably within the contemplation of the parties at the time the Franchise Agreement was entered.

46. Meineke engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the Franchise Agreement between Meineke and Defendants.

47. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

9

Case 3:25-cv-00637-GCM    Document 1    Filed 08/25/25    Page 9 of 12

# FIRST CLAIM FOR RELIEF
(Breach of the Franchise Agreement)

48. Meineke repeats and re-alleges paragraphs 1 through 47 above, which are incorporated by reference as if fully set forth herein.

49. Meineke and Defendants are parties to a valid and enforceable contract – the Franchise Agreement.

50. Meineke has performed all obligations required of it under the Franchise Agreement.

51. Pursuant to the terms of the Franchise Agreement, Defendants were obligated and agreed to pay royalties and advertising contributions to Meineke and to operate the Center for the full Term of the Franchise Agreement.

52. Despite this obligation, Defendants failed to do so by failing to pay amounts owed to Meineke and by prematurely and permanently closing the Center and failing to operate the Center as required under the Franchise Agreement.

53. As a result of Defendants' breaches of the Franchise Agreement, Meineke has been deprived of the benefit of its bargain, which consists of, among other things, the Accounts Receivable for amounts accrued during Defendants' operation and the lost royalties and advertising contributions from the date of termination through the remainder of the Term.

54. Meineke is reasonably certain that such royalty fees and advertising contributions would have been received but for Defendants' breaches of contract.

55. Meineke's lost royalty fees and advertising contributions through the remainder of the Term can be ascertained and measured with reasonable certainty and reasonably should have been within the contemplation of the parties at the time the Franchise Agreement was executed as the probable result of the breach.

56. Meineke's damages for the Accounts Receivable and the royalty fees and advertising

contributions through the remainder of the Term flow directly from Defendants' breaches of the Franchise Agreement.

57. Meineke has exercised reasonable care and diligence to mitigate its damages.

58. Accordingly, Meineke seeks a judgment against Defendants for the Accounts Receivable, the Default Damages, and any other amounts due and owing to Meineke.

WHEREFORE, Meineke hereby respectfully requests judgment against Defendants for: (a) all amounts due and owing under the Franchise Agreement, including the Accounts Receivable; (b) the Default Damages resulting from the unauthorized and premature closure of the Center and any other amounts due to Meineke; (c) pre-judgment interest; (d) Meineke's reasonable attorneys' fees together with costs and expenses of arbitration pursuant to the Franchise Agreement; and (e) all other relief deemed just and proper.

## SECOND CLAIM FOR RELIEF
**(Breach of the Guaranty against the Guarantors)**

59. Meineke repeats and re-alleges paragraphs 1 through 47 as if fully set forth herein.

60. Pursuant to the terms of the Guaranty, the Guarantors agreed to personally and unconditionally guarantee to pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement and to be personally bound by, and personally liable for, each breach of each and every provision in the Franchise Agreement.

61. As a result, the Guarantors are obligated to ensure, among other things, that the Operating Company pays all amounts due under the Franchise Agreement.

62. Despite this obligation, the Guarantors failed and/or refused to comply with their obligations under the Guaranty by failing to pay all of the royalties, advertising contributions, and other amounts due and owing under the Franchise Agreement.

63. As a result of the Guarantors' breaches, Meineke has been directly and proximately

damaged by, among other things, being deprived of the benefit of its bargain under the Franchise Agreement and the Guaranty, which consists of, among other things, the Accounts Receivable, the Default Damages, and other amounts owed under the Franchise Agreement.

64. Meineke is reasonably certain that such amounts would have been received but for the Operating Company's breach of the Franchise Agreement and the Guarantors' breach of the Guaranty. Such amounts can be ascertained and measured with reasonable certainty, and such amounts were reasonably within the contemplation of the parties at the time the Franchise Agreement was executed as the probable result of each breach.

65. Meineke's damages flow directly from the Operating Company's breach of the Franchise Agreement and the Guarantors' breach of the Guaranty.

66. Meineke has exercised reasonable care and diligence to mitigate its damages.

67. Accordingly, Meineke seeks a judgment against the Guarantors for the outstanding amount of the Accounts Receivable, the Default Damages, and any other amounts owed to Meineke.

WHEREFORE, Meineke Franchisor SPV, LLC, hereby respectfully requests judgment against Usman Ahmad and Gulzar Ahmad for: (a) all amounts due and owing under the Franchise Agreement and the Guaranty, including the Accounts Receivable; (b) the Default Damages resulting from the unauthorized and premature closure of the Center and any other amounts due to Meineke; (b) prejudgment interest; (c) Meineke's reasonable attorneys' fees together with costs and expenses of arbitration pursuant to the Franchise Agreement; and (d) all other relief deemed just and proper.

Dated: August 25, 2025     */s/ Danielle Diller*
Danielle Diller, Esq.
North Carolina Bar No. 60026
Email: danielle.diller@dinsmore.com
DINSMORE & SHOHL, LLP
201 N. Franklin Street, Suite 3050
Tampa, Florida 33602
Telephone: 813-543-9848
*Attorneys for Meineke Franchisor SPV LLC*